FILED
United States Court of Appeals
Tenth Circuit

June 30, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

SYLVIA DEAN,

        Plaintiff-Appellant,

v.

COMPUTER SCIENCES
CORPORATION,

        Defendant-Appellee.

No. 09-1280
(D.C. No. 1:07-CV-00823-PAB-KMT)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, Chief Judge, **TYMKOVICH**, and **GORSUCH**,
Circuit Judges.

---

Sylvia Dean appeals pro se the district court's grant of summary judgment

in favor of Computer Sciences Corporation (CSC) on her claims alleging race,

color, and sex discrimination, hostile work environment, and retaliation in

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a)(1) & 2000e-3(a). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Factual Background

Ms. Dean worked for CSC from March 22, 2004, until her employment was terminated on February 23, 2006. During that time, CSC was providing services to Lockheed Martin Integrated Systems & Solutions (Lockheed) at the Cheyenne Mountain Mission Assurance Center (CMAC), as a subcontractor to Lockheed on a government contract (the "Lockheed Contract"). Ms. Dean worked for CSC as a database administrator (DBA) staffed on the Lockheed Contract. She was responsible for monitoring mission-critical computer systems at CMAC that were gathering data from the North American Aerospace Defense Command. The Boeing Company (Boeing) and BAE Systems (BAE) were also subcontractors on the Lockheed Contract. In her DBA position, Ms. Dean worked with Boeing and BAE employees, as well as military personnel. Ms. Dean is African American and she claims she was the only black person working at CMAC.

Ms. Dean worked twelve-hour night shifts for CSC, on a schedule alternating three days on, three days off, three days on, then six days off. While employed by CSC, Ms. Dean also continued to work a full-time day job for another employer. On the days that she worked both of her jobs, Ms. Dean would get only one hour of sleep per day for up to three days in a row.

During most of her employment with CSC, Ms. Dean's supervisor was Kenneth O'Neil. Because Mr. O'Neil did not work onsite at CMAC, David Stroup, a Boeing employee, supervised her day-to-day work. Ms. Dean asked Mr. O'Neil for a pay increase in December 2004. She told him she had applied for a DBA position with Boeing at a higher salary. Mr. O'Neil did not give her the significant raise she sought. He responded in an email that he considered her an average performer. He contrasted her performance, which he indicated may have been impacted by her working two jobs, with the performance of a co-worker, who he said had saved the Lockheed Contract tens of thousands of dollars and about whom he routinely received positive feedback.

Ms. Dean testified that her working relationships with several people staffed on the Lockheed Contract deteriorated after her communications with Mr. O'Neil about the pay increase. She identified these other workers as Ms. Triplett, a Boeing employee (and the co-worker Mr. O'Neil referred to in his December 2004 email); Mr. Johnson, a BAE employee; and Mr. Robinson, a CSC employee. According to Ms. Dean, Ms. Triplett and Mr. Johnson regularly worked the day shift together. She said they would put new procedures in place during their shift, fail to document them, then criticize the night shift DBAs who didn't follow the new procedures. Ms. Dean also alleged that Ms. Triplett and Mr. Johnson were responsible for "ousting" a white female employee named Betty from a Boeing DBA position because she was too slow. Aplee. Supp. App.

-3-

at 42. She contended Ms. Triplett and Mr. Johnson had "clout" with Mr. O'Neil because of their close relationship with him. *Id.* at 43. Ms. Dean complained that she was constantly under surveillance by Ms. Triplett, Mr. Johnson, and Mr. Robinson, who reported her performance issues directly to Mr. O'Neil, rather than to Mr. Stroup. One such performance issue related to Master Station Log (MSL) entries, which were part of Ms. Dean's DBA job responsibilities and involved documenting her monitoring activities in a reporting system designed by Mr. Robinson. She felt that she was being singled out for deficiencies in her MSL entries by Ms. Triplett, Mr. Johnson, and Mr. Robinson.

Ms. Dean met with Mr. Stroup about her MSL entries in October 2005 and complained to him specifically about Mr. Johnson and Ms. Triplett. She followed up with an email to Mr. Stroup, saying that she felt she had been "taking a lot of heat from people" for requesting a shift change, for her MSL entries, and for having a second job. Aplee. Supp. App. at 148. Ms. Dean does not dispute that her email accurately summarized the concerns she raised in their meeting. Her email did not mention any allegation of race, color, or sex discrimination. She did describe numerous personal problems she was experiencing at the time, which she admitted were affecting her work. Ms. Dean forwarded this email to Mr. O'Neil in December 2005.

Ms. Dean met with Mr. O'Neil on December 8, 2005, to review several performance issues involving insubordination, sleeping on the job, leaving before

completing her shift, and failing to complete her time card on a daily basis. Ms. Dean did not deny the performance allegations, but she complained that she was being singled out for infractions other employees were also committing. Shortly after this meeting, Mr. O'Neil distributed an email reminding all Lockheed Contract staff that sleeping on the job was not condoned. In early February 2006, Ms. Dean learned from a co-worker that Mr. O'Neil was investigating a new allegation about her sleeping on the job. She claims that Mr. O'Neil began this investigation after she asked another CSC employee not to report her if he had seen her sleeping on her shift. Ms. Dean asserts that Mr. Johnson and Ms. Triplett overheard her conversation with the other CSC employee and reported it to Mr. O'Neil.

Ms. Dean was scheduled to meet with Mr. O'Neil again on February 9 to discuss her ongoing performance issues. The day before, on February 8, she submitted a complaint to William Smith in CSC's employee relations department regarding "Discrimination and Harassment." Aplee. Supp. App. at 151. She asserts that she submitted this complaint because she wanted to go on record with her side of the story before being disciplined by Mr. O'Neil. In her email to Mr. Smith, she described herself as "a single black mother" of two young children, "working two jobs," with "several medical condi[]tions and other things on [her] plate." *Id.* She stated she tried "desperately not to doze off at work while medicated and working two jobs." *Id.* at 152. She claimed that all

night-shift employees tend to doze off, but not all were being disciplined for it. Regarding Ms. Triplett and Mr. Johnson, she claimed they were the source of every complaint about her performance to their friend, Mr. O'Neil. She said they were trying to have her fired because they did not like her. She characterized Ms. Triplett's, Mr. Johnson's, and Mr. O'Neil's behavior toward her as harassing and discriminating.

Ms. Dean admitted in her testimony that she did not make any allegation of race, color, or gender discrimination in her February 8 email to Mr. Smith. But she claimed she told him orally that she felt she was being harassed and discriminated against based on her sex and race. She described to Mr. Smith comments made to her by Mr. Johnson that she believed to be sexually and/or racially derogatory. She testified that he made such remarks "two or three, four or five" times, Aplee. Supp. App. at 99, and provided the following examples:

> "How can you afford to live in a high-end neighborhood and drive a nice car when I can't do that?" *Id.* at 50.
> "How can your husband not work? You must be doing something else." *Id.*
> "Look at the car you drive. It's a drug dealer's car. Look at the house you live in. How can you afford that without doing something on the side?" *Id.* at 92.
> "You've got that nice car. What are you doing on the side? What does your husband do on the side? He doesn't work. What does he do?" *Id.* at 101.
> "A woman is supposed to be at home with her kids. Why are you working two jobs?" *Id.* at 98.

Ms. Dean admitted that she did not report these comments to anyone at CSC at the times they were made. She also admitted that she never heard Mr. O'Neil or any other CSC employee make any derogatory remark about her sex or her race. She explained that she was only comfortable discussing her race discrimination allegations with Mr. Smith because she believed he was also African American. She said she did not make such an allegation to her manager, for fear that he would take offense.

On February 9, Mr. O'Neil made clear to Ms. Dean that the focus of their meeting was her performance issues and he counseled her again regarding sleeping during her work hours and her continued timekeeping problems. According to Ms. Dean, Mr. O'Neil said he was not going to write her up for these infractions at that time. Later that day, Ms. Dean sent emails to Ms. Triplett's and Mr. Johnson's supervisors at Boeing and BAE. She asked them for assistance in making harassment complaints against Ms. Triplett and Mr. Johnson. She did not make any allegation of race-, color-, or gender-based harassment in her emails to Boeing and BAE.[1]

Ms. Dean sent an email to Mr. Smith on February 13, indicating that she might file a complaint with the EEOC. On February 14, Mr. O'Neil issued her a

---

[1] Ms. Dean's email to Ms. Triplett's supervisor is not in the record, but she does not dispute that its content was generally the same as the email she sent to Mr. Johnson's supervisor.

formal Letter of Caution, finding she had committed infractions related to sleeping on the job, asking other employees not to report her sleeping, and continued problems with her timekeeping practices. Ms. Dean refused to sign the Letter of Caution and she lodged a complaint with Lee Swerline in CSC's employee relations department that Mr. O'Neil had retaliated against her for submitting her complaints about Mr. Johnson and Ms. Triplett to their employers. She once again admitted to "dozing off on the job," but asserted that the Letter of Caution was unfair because she had previously requested help via a shift change. Aplee. Supp. App. at 175.

On February 15, Mr. O'Neil acknowledged in an email to Ms. Dean that he decided to issue the Letter of Caution upon learning she had submitted complaints to Boeing and BAE, "in an effort to divert attention from your problem." *Id.* at 163. Later that day, Mr. O'Neil attended an operations management meeting with Lockheed personnel, at which Ms. Dean's job performance was discussed. Ms. Dean responded that night to Mr. O'Neil's February 15 email:

> I am now in receipt of the "Letter of Caution" and I take full responsibility for my faults. I would like to work on these problems without having further distractions. . . . You are fully aware of my situation with [Mr. Johnson and Ms. Triplett] and we in fact discussed this in our meeting. The issue was discussed in our December meeting as well. I also discussed this with my immediate supervisor in October. So prior to any of this I had made claims of being singled-out, discriminated against and harassed and this was not addressed. So therefore, your suggestion of my diverting attention to another issue to avoid my problem i[s] invalid because I have continued to work in a hostile work environment where I knew

> I was being retaliated against. . . . This still remains an issue and only getting worse as I feel I am being singled-out, retaliated against and there is increased surveillance based on my complaints.

Aplee. Supp. App. at 162. She did not say that her complaints of discrimination and harassment were related to her race, color, or gender.

On February 16, 2006, a Lockheed employee issued a letter directing CSC to remove Ms. Dean from her "critical position" on the Lockheed Contract, based on "specified incidences [that] have prevented satisfactory fulfillment of the assigned job duties and responsibilities by the individual to the detriment of the [Lockheed Contract]." *Id.* at 181. The next day, February 17, Ms. Dean sent an email to Mr. Stroup, copying Ms. Triplett, Mr. Johnson, and Mr. Robinson, complaining again about scrutiny of her MSL log entries. She stated, "It remains a hostile work environment and that is simply because these three best of friends [Ms. Triplett, Mr. Johnson, and Mr. Robinson] choose to buddy up on me and then no longer report to you, but directly to [Mr. O'Neil]." *Id.* at 164. Mr. Stroup forwarded Ms. Dean's email to Mr. O'Neil the same day.

Meanwhile, Mr. Swerline was investigating Ms. Dean's harassment/discrimination claim. He asked her to provide more specifics—facts, dates, times, and names—to verify her allegations of workplace harassment. She testified that she referred Mr. Swerline to Mr. Smith. She also sent Mr. Swerline an email on February 17, with the same description of events and allegations she had made previously, adding a claim that Mr. O'Neil had ordered even more close

supervision of her work. She indicated to Mr. Swerline that her next steps might be to hire an attorney and contact the EEOC and the Colorado Department of Labor. She refrained from specifically alleging that she was being harassed based on her race, color, or gender, but she queried what the possible motivation for it could be: "Is it because I am a Black Woman? Is it because these four persons are good friends?" Aplee. Supp. App. at 172. Ms. Dean completed her last shift with CSC on February 17.

Mr. O'Neil and Mr. Swerline spoke to Ms. Dean by telephone on February 23, 2006. As confirmed in a letter to Ms. Dean from Mr. O'Neil, he informed her that Lockheed had requested her removal from the Lockheed Contract and that her employment was being terminated under the CSC layoff policy because the company did not have another position available for her. There is no dispute that Mr. O'Neil made the decision to terminate Ms. Dean.

## II. Procedural Background

Ms. Dean filed this action in district court, alleging that CSC had discriminated against her on the basis of her race, color, and sex in terminating her employment. Her complaint also alleged a hostile work environment and unlawful retaliation. CSC moved for summary judgment on all claims.

The district court referred CSC's motion to a magistrate judge, who recommended granting summary judgment on Ms. Dean's discrimination and hostile work environment claims, but allowing her retaliation claim to go to trial.

The magistrate judge advised the parties they had ten days to serve and file written objections to the recommendation and that failure to file timely objections "will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge." Aplee. Supp. App. at 253. CSC objected to the magistrate judge's recommendation to deny summary judgment on Ms. Dean's retaliation claim. She filed no objections. The district court adopted the magistrate judge's recommendation to grant summary judgment to CSC on Ms. Dean's discrimination and hostile work environment claims. But the court disagreed with the magistrate judge's assessment of her retaliation claim and, declining to adopt that portion of the recommendation, granted CSC summary judgment on that claim as well.

Ms. Dean filed motions for reconsideration and relief from judgment, in which she argued that she did not receive the magistrate judge's recommendation, so had no opportunity to object. She then filed a premature notice of appeal. This appeal was docketed, then abated pending the district court's ruling on her post-judgment motions. The district court denied Ms. Dean's motions, concluding that CSC had rebutted her claim that she did not receive the recommendation and, in any event, she was certainly aware of it, yet made no effort to review it and file timely objections. Ms. Dean did not file a separate notice appealing the district court's denial of her post-judgment motions.

-11-

### III.  Standard of Review

We review the district court's grant of summary judgment de novo, viewing all facts and all reasonable inferences from those facts in the light most favorable to Ms. Dean.  *See Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1195 (10th Cir. 2008).  Summary judgment is appropriate if "the evidence reveals no genuine issue of material fact and the movant is entitled to judgment as a matter of law."  *Id.*  We construe Ms. Dean's pro se appeal arguments liberally.  *See de Silva v. Pitts*, 481 F.3d 1279, 1283 n.4 (10th Cir. 2007).

### IV.  Discussion

#### Waiver of Appellate Review

The magistrate judge recommended granting CSC's motion for summary judgment on Ms. Dean's discrimination and hostile work environment claims. The record unequivocally shows that she failed to timely object to the recommendation.  The district court thereafter adopted the magistrate judge's recommendation in granting CSC summary judgment on these two claims.

"We have adopted a firm waiver rule when a party fails to object to the findings and recommendations of the magistrate.  The failure to timely object to a magistrate's recommendations waives appellate review of both factual and legal questions."  *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quotations, citation, and brackets omitted).  "The waiver rule applies to pro se litigants, provided they were informed of the time period for objecting and the

consequences of failing to object." *Wardell v. Duncan*, 470 F.3d 954, 958 (10th Cir. 2006). The magistrate judge specifically advised Ms. Dean of these conditions.

But "[t]he waiver rule may be suspended when the 'interests of justice' warrant, or when the aggrieved party makes the onerous showing required to demonstrate plain error." *Id.* (citation omitted). In assessing whether the interests of justice favor an exception to the firm waiver rule, "we have considered factors such as a *pro se* litigant's effort to comply, the force and plausibility of the explanation for his failure to comply, and the importance of the issues raised." *Duffield*, 545 F.3d at 1238 (quotation omitted). The first two of these factors do not weigh in Ms. Dean's favor. Although she persists in asserting that she did not receive the magistrate judge's recommendation, and therefore could not file timely objections to it, the district court held otherwise in denying her post-judgment motions, and she has not appealed that ruling. *See* Fed. R. App. P. 4(a)(4)(B)(ii) (requiring party intending to challenge order disposing of post-judgment motion to file notice of appeal or amended notice of appeal).

To assess whether the importance of the issues raised might trigger the interests of justice exception, we review Ms. Dean's discrimination and hostile work environment claims for plain error. *See Duffield*, 545 F.3d at 1238. Plain error is "(1) error, (2) that is plain, which (3) affects substantial rights, and which

(4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotation omitted). "[A]n error is 'plain' if it is clear or obvious at the time of appeal . . . ." *Morales-Fernandez v. INS*, 418 F.3d 1116, 1124 (10th Cir. 2005).

The magistrate judge's recommendation, as adopted by the district court, concluded that, even if Ms. Dean satisfied her burden to prove a prima facie case of race, color, or sex discrimination under the familiar *McDonnell-Douglas* burden-shifting framework, CSC proffered a legitimate, nondiscriminatory explanation for her termination, thus shifting the burden back to her to show that CSC's reason was a pretext to conceal intentional discrimination. *See Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167-68 (10th Cir. 2007) (describing pretext analysis).

The court then held that Ms. Dean failed to show a genuine issue of material fact that CSC's proffered basis for her termination was pretextual, noting she acknowledged that sleeping on the job was against company policy, there was no evidence that CSC acted contrary to written or unwritten policy in terminating her, and she presented no evidence that she was treated differently from other similarly situated, non-protected employees. *See id.*

On her hostile work environment claim, the district court also adopted the magistrate judge's findings in the recommendation, concluding that Mr. Johnson's alleged statements were insufficient to establish a workplace "permeated with

-14-

discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1097 (10th Cir. 1999) (quotations and brackets omitted).

On appeal, Ms. Dean fails to demonstrate an error by the district court so plain and substantial as to satisfy the requirements for plain error review. *See Wardell*, 470 F.3d at 958. "We need not pursue the point any further. Indeed, to do so would undercut . . . the firm waiver rule . . . ." *Id.*

### *Retaliation*

The magistrate judge recommended denial of CSC's motion for summary judgment on Ms. Dean's retaliation claim. CSC filed objections to that portion of the recommendation. After reviewing the parties' summary judgment arguments de novo, the district court granted CSC summary judgment on her retaliation claim as well. She asserts that the district court's decision was in error.

In order to succeed on a retaliation claim, a plaintiff must show: (1) she "engaged in protected opposition to discrimination"; (2) she "suffered an adverse employment action"; and (3) "there is a causal connection between the protected activity and the adverse employment action." *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002). The district court concluded that CSC is entitled to summary judgment on Ms. Dean's retaliation claim because she failed

to establish a prima facie case of retaliation. We agree, although based on slightly different reasoning.

In *Petersen*, we held that, in order to engage in protected opposition to discrimination, an employee must oppose an employment practice made unlawful by Title VII. *See id.* Title VII makes it unlawful for an employer "to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Thus, an employee's complaints regarding unfair treatment, no matter how unconscionable, cannot be "protected opposition to discrimination" unless the basis for the alleged unfair treatment is some form of *unlawful* discrimination. *See Petersen*, 301 F.3d at 1188. And in order to establish a causal connection between the protected opposition and the adverse employment action, the employee's superior must have knowledge that he or she is engaging in such protected opposition, because "[a]n employer's action against an employee cannot be *because* of that employee's protected opposition unless the employer knows the employee has engaged in protected opposition." *Id.*; *see also Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993) (holding plaintiff failed to prove causal connection between protected activity and employer's action absent evidence supervisor who made termination decision was aware of his EEO complaints).

Here, Ms. Dean alleged that Mr. O'Neil issued the Letter of Caution, and ultimately decided to terminate her employment, in retaliation for the complaints

-16-

she made about harassment and discrimination. Mr. O'Neil acknowledged that he decided to issue the Letter of Caution in reaction to her sending complaints to Boeing and BAE about Ms. Triplett and Mr. Johnson.

But the issue is whether Ms. Dean conveyed to Mr. O'Neil a concern that CSC had engaged in a practice made unlawful by Title VII. "Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [Title VII]." *Hinds*, 523 F.3d at 1203. Ms. Dean contends that she conveyed to CSC her concern that it had engaged in sex, race, and color discrimination.

A review of the record indicates that nearly all of Ms. Dean's complaints to CSC regarding "harassment" and "discrimination" made no mention of race, color, or sex. Notably, her complaints to Boeing and BAE, which Mr. O'Neil admitted spurred him to issue the Letter of Caution, did not allege race-, color- or gender-based harassment or discrimination. But Ms. Dean did testify that she told Mr. Smith about Mr. Johnson's alleged derogatory remarks and that she informed him she felt she was being harassed and discriminated against based on her gender and race. She also points to three emails that she asserts put CSC on notice regarding her protected opposition to discrimination: (1) her February 8, 2006 email to Mr. Smith, in which she referred to herself as a "single black mother"; (2) her February 13, 2006 email to Mr. Smith, indicating that she might

-17-

file a complaint with the EEOC; and (3) her February 17, 2006 email to Mr. Swerline, in which she hypothesized that the conduct she complained of could have been based on her being a black woman, or could have occurred because the four people involved were good friends. In her February 17 email she also informed Mr. Swerline that her next step might be to contact the Colorado Department of Labor and the EEOC.

We agree with the district court that, when read in context, Ms. Dean's reference to herself as a "single black mother" in her February 8 email was not an assertion of a discriminatory motive for the conduct of which she complained. Indeed, she admitted in her testimony that she made no allegation of race, color, or gender discrimination in that email. But her oral statement to Mr. Smith that she believed the alleged harassment and discrimination she complained of was race- and gender-based sufficiently conveyed a concern that CSC was permitting a practice made unlawful by Title VII. Her February 13 and 17 emails both indicated that she might file an EEOC complaint. These communications, particularly when coupled with her previous oral statements to Mr. Smith and her allusion to color- and sex-based harassment in her February 17 email to Mr. Swerline, may also have been sufficient to qualify as protected opposition.[2]

---

[2]     In concluding that Ms. Dean failed to establish she engaged in protected opposition to discrimination, the district court did not consider her February 13 and 17 emails to Mr. Smith and Mr. Swerline. And the court appeared to

(continued...)

-18-

We need not decide that question because Ms. Dean's retaliation claim fails on the causal connection element. *See Hinds*, 523 F.3d at 1203.

Ms. Dean points to no evidence in the record indicating that Mr. O'Neil was privy to her statements to Mr. Smith, or that Mr. O'Neil received copies or otherwise learned the contents of her February 8, 13, or 17 emails. *See id.* (holding plaintiff failed to establish causation with competent evidence that decisionmaker saw document alleged to convey protected opposition to discrimination). In fact, she testified that she made a conscious decision *not* to report her claim of race discrimination to her supervisor. And she has never alleged that Mr. Smith or Mr. Swerline harbored discriminatory animus toward her, such that they knew and used Mr. O'Neil as a "cat's paw" to effect their own biased designs. *See Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1176 (10th Cir. 2007). Therefore, Ms. Dean failed to establish a causal connection between her protected opposition to discrimination and Mr. O'Neil's decision to

---

[2](...continued)
conclude that, because the allegedly discriminatory comments she reported to Mr. Smith were insufficient to support a prima facie case of discrimination, they were also insufficient to put CSC on notice of her discrimination claim. But Ms. Dean's opposition to discrimination could be protected even if her claim had no merit. *See Petersen*, 301 F.3d at 1188. And although her description of Mr. Johnson's statements alone may have been too vague to convey the nature of her complaint, she testified that she told Mr. Smith of her belief that the alleged harassment and discrimination was based on her race and gender.

terminate her employment. *See id.* The district court did not err in granting summary judgment in favor of CSC on Ms. Dean's retaliation claim.

The judgment of the district court is AFFIRMED.

Entered for the Court


Timothy M. Tymkovich
Circuit Judge