**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 9, 2005**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

# UNITED STATES COURT OF APPEALS
# TENTH CIRCUIT

---

EUCLIDES MORALES-FERNANDEZ,

  Petitioner-Appellant,

v.

IMMIGRATION & NATURALIZATION
SERVICE,

  Respondent-Appellee.

No. 03-1111

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 01-N-2451)**

---

Submitted on the Briefs:

Euclides Morales-Fernandez, *pro se*.

John W. Suthers, United States Attorney, and Mark S. Pestal, Assistant United
States Attorney, Denver, Colorado, for Respondent-Appellee.

---

Before **SEYMOUR**, **MURPHY** and **O'BRIEN**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

Euclides Morales-Fernandez appeals the district court's dismissal of his *pro se* 28 U.S.C. § 2241 petition for a writ of habeas corpus.[1]  The Supreme Court recently held that 8 U.S.C. § 1231(a)(6) limits an inadmissible alien's post-removal detention to a reasonable time period and does not permit indefinite detention by the Immigration and Naturalization Service (INS).[2]  *Clark v. Martinez*, 125 S. Ct. 716 (2005).  *Clark*'s holding dictates Mr. Morales-Fernandez is entitled to be released and paroled into the country.  As a result, we reverse and remand this case for proceedings consistent with this opinion.

I

Mr. Morales-Fernandez is a native and citizen of Cuba who arrived in this country with 125,000 other Cuban nationals during the 1980 Mariel boatlift.  Officials from the INS detained the Mariel Cubans at the border and later made a decision to exclude them from the United States.  The United States has been

---

[1]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The cause is therefore ordered submitted without oral argument.

[2]The Immigration and Naturalization Service (INS) was abolished on March 1, 2003 pursuant to section 471 of the Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135 (2002), which created the Department of Homeland Security (DHS).  Within DHS, the Bureau of Immigration and Customs Enforcement (BICE) is responsible for the former INS function of detaining and removing aliens within the United States.  Nevertheless, for purposes of consistency, we will continue to refer to defendant as INS.

unable to return the Mariel Cubans to Cuba, however, because Cuba has thus far refused to accept them. No other country has expressed a willingness to accept the Mariel Cubans.

Following his initial detention, Mr. Morales-Fernandez was granted immigration parole into the United States under section 212(d)(5) of the Immigration and Nationality Act. *See* 8 U.S.C. § 1182(d)(5). As an individual ineligible for admission into the United States, Mr. Morales-Fernandez is classified as an "inadmissible alien" under the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA).[3] *See* Pub. L. No. 104-208, 110 Stat. 3009, 3009-546 (1996). His status as an inadmissible alien has remained static for the entire twenty-five years he has been present in the United States.

After a felony conviction in 1993 for possession with intent to sell a controlled substance, Mr. Morales-Fernandez was sentenced to one year in prison. In 1995, his immigration parole was revoked due to the criminal conviction. He

---

[3]Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) in 1996. *See* Pub. L. No. 104-208, 110 Stat. 3009, 3009-546 (1996). The statute made comprehensive changes to the Immigration and Nationality Act (INA), including changes in immigration terminology. Prior to IIRIRA, individuals who were ineligible for admission to the United States were referred to as "excludable," while those who had gained admission were referred to as "deportable." *See* 8 U.S.C. §§ 1182, 1251 (1994). Excludable aliens are now referred to as "inadmissible" aliens. *See* 8 U.S.C. § 1182. In addition, the amended INA now uses the term "removal proceedings" to refer to the proceedings applicable to both inadmissable and deportable aliens. *See* 8 U.S.C. § 1229a.

was taken into INS custody and exclusion proceedings were initiated. The INS issued a final order of removal on November 9, 1999. Mr. Morales-Fernandez is currently detained in INS custody at the Federal Correctional Institute in Florence, Colorado.

The Cuban Review Panel considers Mr. Morales-Fernandez's case annually to determine his suitability for immigration parole. *See* 8 C.F.R. § 212.12. On February 8, 2002, the Review Panel recommended he be released as soon as possible to a willing family member. The Associate Commissioner adopted the panel's recommendation and issued a Notice of Releaseability. But the INS was unsuccessful in finding suitable living arrangements for him. Then, on August 23, 2002, Mr. Moralez-Fernandez was convicted by a Bureau of Prisons hearing officer of assault on staff and refusal to obey an order. Due to this prisoner disciplinary conviction, the Associate Commissioner withdrew the Notice of Releaseability.

Mr. Moralez-Fernandez filed a petition for a writ of habeas corpus pursuant to 28 U.S.C § 2241, asserting two claims. First, he argued that the Attorney General does not have statutory authority to detain an inadmissible alien indefinitely. Second, he maintained that his indefinite detention violates his Fifth Amendment substantive due process rights. The INS filed a motion to dismiss. The matter was referred to a magistrate judge who issued a report recommending

that the district court dismiss Mr. Morales-Fernandez's § 2241 petition. Neither party objected to the recommendation. The district court adopted the magistrate's recommendation and this appeal followed.

II

As a threshold matter, we note that Mr. Morales-Fernandez failed to file written objections to the magistrate judge's recommendations. This court has adopted a firm waiver rule under which a party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). This rule does not apply, however, when (1) a *pro se* litigant has not been informed of the time period for objecting and the consequences of failing to object, or when (2) the "interests of justice" require review. *Id.*; *Wirsching v. Colorado*, 360 F.3d 1191, 1197 (10th Cir. 2004); *Talley v. Hesse*, 91 F.3d 1411, 1413 (10th Cir. 1996); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) ("because the rule is a nonjurisdictional waiver provision, the Court of Appeals may excuse the default in the interests of justice").

The first exception to the firm waiver rule does not apply in this case. The magistrate judge's report and recommendation stated in clear English that Mr. Morales-Fernandez had ten days in which to serve and file written objections and

that a "failure to make timely objections to the magistrate judge's recommendation may result in a waiver of the right to appeal from a judgment of the district court based on the findings and recommendations of the magistrate judge." Aplt. Br. Attach. at 20. Thus, the magistrate attempted to apprise Mr. Morales-Fernandez of the consequences of a failure to object. Nonetheless, we are persuaded to exercise our discretion under the interests of justice exception to overlook the waiver rule in the instant matter.

We recently recognized in a *pro se* prisoner case that "[o]ur decisions have not defined the 'interests of justice' exception with much specificity." *Wirsching*, 360 F.3d at 1197. Likely this is because "interests of justice" is a rather elusive concept. We have, however, enumerated several factors this court has considered in determining whether to invoke the exception. For instance, a *pro se* litigant's effort to comply, the force and plausibility of the explanation for his failure to comply, and the importance of the issues raised are all relevant considerations in this regard. *See generally Wirsching*, 360 F.3d at 1197-98 (10th Cir. 2004); *Theede v. United States Dep't of Labor*, 172 F.3d 1262, 1268 (10th Cir. 1999).

In many respects, the interests of justice analysis we have developed, which expressly includes review of a litigant's unobjected-to substantive claims on the merits, is similar to reviewing for plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428 (5th Cir. 1996) (*en banc*) (holding that "plain

error review, alone, satisfies *Thomas v. Arn*'s concern for the 'interests of justice'"). Indeed, we can think of no rational basis for excepting a *pro se* litigant's failure to object to a magistrate's report from our longstanding practice of reviewing for plain error issues raised for the first time on appeal by counseled litigants. *Id*. ("the failure to object to a magistrate judge's report and recommendation is really no different from, for example, the failure of counsel in open court to object to the admission of evidence").

The notion that the plain error and interests of justices analyses are similar is supported by Supreme Court and Tenth Circuit case law. Both the Court and this circuit have frequently described the FED. R. CRIM. P. 52(b) plain error standard as shorthand for or synonymous with an "interests of justice," "miscarriage of injustice," or "manifest injustice" exception to a litigant's failure to object in the trial court. *See, e.g., United States v. Olano,* 507 U.S. 725, 736 (1993) (the "discretion conferred by Rule 52(b) should be employed [only] in those circumstances in which a *miscarriage of justice* would otherwise result.") (emphasis added); *United States v. Young*, 470 U.S. 1, 15 (1985) ("the *plain-error* exception to the contemporaneous-objection rule is to be used sparingly, solely in those circumstances in which *a miscarriage of justice* would otherwise result") (emphasis added); *United States v. Gonzalez-Huerta*, 403 F.3d 727, 736 (10th Cir. 2005) (*en banc*) ("we will not notice a *non-constitutional error* [on *plain error*

*review*] unless it is both 'particularly egregious' and our failure to notice the error would result in a '*miscarriage of justice*'") (emphasis added); *Allan v. Springville City*, 388 F.3d 1331, 1334 n.2 (10th Cir. 2004) ("Satisfying *plain error review* requires showing that the jury instruction was not only erroneous and prejudicial, but that failure to set aside the jury's verdict would result in a *fundamental injustice*.") (emphasis added); *United States v. Kimler*, 335 F.3d 1132, 1141 (10th Cir. 2003); ("because [defendant] is deemed to have *waived* this issue, we will not address it on appeal except for a review for *plain error resulting in manifest injustice*.") (emphasis added); *United States v. Chavez-Marquez*, 66 F.3d 259, 261 (10th Cir. 1995) (stating that we do not consider issues raised for the first time on appeal except to review for *plain error resulting in manifest injustice*) (emphasis added); *cf. United States v. Moore*, 83 F.3d 1231, 1234 (10th Cir. 1996) (recognizing that "the mandate rule . . . is a discretion-guiding rule subject to exception in the *interests of justice*" and one such exception is for "*blatant error*" that "would result in *serious injustice* if uncorrected") (emphasis added). Indeed, immediately after articulating that the court of appeals may excuse a party's failure to object to a magistrate's recommendations in the "interests of justice" in *Thomas v. Arn*, the Supreme Court dropped a footnote which reads:

> *Cf.* FED. RULE CRIM. PROC. 52(b) (court may correct plain error despite failure of party to object). We need not decide at this time what standards the courts of appeals must apply in considering exceptions to their waiver rules.

*Thomas v. Arn*, 474 U.S. at 155 n.15.

It is worth noting that there is a rather dramatic split between the federal courts of appeal as to the consequences of a litigant's failure to object to a magistrate judge's report. Three circuits have limited the waiver effect to factual issues, leaving legal issues open for review despite the absence of objections. *See, e.g.*, *Burgess v. Moore*, 39 F.3d 216, 218 (8th Cir. 1994) (objection to magistrate judge's report not necessary to preserve appeal on question of law); *Martinez v. Ylst*, 951 F.2d 1153, 1156 & n.4 (9th Cir. 1991) (failure to object on legal issues without more will not ordinarily constitute waiver); *United States v Warren*, 687 F.2d 347, 348 (11th Cir. 1982) (absence of objections to magistrate judge's report limits scope of appellate review of factual findings to plain error or manifest injustice but does not limit review of legal conclusions). Pertinent to our analysis, the Eighth and Eleventh Circuits have further held that where a defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error. *See United States v. Brooks*, 285 F.3d 1102, 1105 (8th Cir. 2002) (reviewing factual findings for plain error where litigant made no objections to magistrate judge's report and recommendation); *United States v. Hall*, 716 F.2d 826, 828-29 (11th Cir. 1983) (holding that defendant who failed to file timely objections to report and recommendation denying motion to suppress

did not waive right to appeal ruling but may challenge factual findings only under plain error standard). The Fifth Circuit reviews both factual and legal conclusions underlying the defendant's appeal for plain error where the defendant fails to file timely objections to the magistrate judge's report and recommendation. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428 (5th Cir. 1996) (en banc) (failure to object precludes objection on appeal not only to proposed factual findings but also to proposed legal conclusions, except when they suffer from plain error). Sitting *en banc*, the Fifth Circuit unanimously reasoned that "there is no meaningful difference between the 'affects substantial rights' and the 'fairness, integrity or public reputation of judicial proceedings' parts of the plain error standard, on the one hand, and manifest injustice on the other . . . the latter is simply a shorthand version for these two parts of the plain error standard." *Id.* at 1428.

Some circuits maintain that the failure to object to a magistrate judge's report constitutes a firm waiver. *See, e.g.*, *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150-51 (1st Cir. 1994) (failure to object to magistrate judge's report within ten days waives absolute right to appeal district court order); *F.D.I.C. v. Hillcrest Assoc.*, 66 F.3d 566 (2d Cir. 1995) (reiterating general rule and outlining exception for *pro se* litigants unless "magistrate's report explicitly states that failure to object to the report within ten (10) days will preclude appellate review

and specifically cites 28 U.S.C. § 636(b)(1) and Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure"); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984) (defendant's failure to file written objections to magistrate's report within allotted 10- day period waived right to appellate review); *United States v. 1184 Drycreek Rd.*, 174 F.3d 720, 725-26 (6th Cir. 1999) (claimant's failure to object to magistrate's report waived right to appellate review)*; Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir.1995) ("[f]ailure to file objections with the district court to a magistrate's report and recommendation waives the right to appeal all issues addressed in the recommendation, both factual and legal").  Nonetheless, several of these circuits have applied something akin to plain error review to unobjected-to claims, particularly when the litigant appealing is *pro se*.  For example, the Second Circuit has excused a *pro se* habeas petitioner's failure to object to the magistrate judge's adverse recommendation on a critical claim in the interests of justice, stating

> Such discretion is exercised based on, among other factors, *whether the defaulted argument has substantial merit* or, put otherwise, whether the magistrate judge committed *plain error* in ruling against the defaulting party.

*Spence v. Superintendent, Great Meadow Correctional Facility*, 219 F.3d 162, 174 (2d Cir. 2000) (emphasis added).  Moreover, the Seventh Circuit has held that if a defendant's attorney is incompatible, let alone incompetent, "he cannot

fairly be held responsible for his attorney's failure to timely object to the magistrate's ruling. To bar appellate review under this limited circumstance would defeat the ends of justice." *United States v. Brown*, 79 F.3d 1499, 1504-05 (7th Cir. 1996) (quotation omitted) ("Equitable considerations come into play when determining whether an unchallenged pretrial ruling may yet be contested on appeal, and under certain circumstances the failure to file objections may be excused."). The court reviewed the defendant's Sixth Amendment claim on the merits under the preserved error standard of review rather than forcing the defendant to meet his burden under plain error. *Id*. at 1505.

Finally, in an interesting display of independence, the Third Circuit has declined to embrace the waiver concept at all. *Cont'l Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 250 (3d Cir. 1998) ("a failure to object to a magistrate judge's report and recommendation does not foreclose appellate review in this Court").

We find the reasoning of the circuits that apply a plain error standard to the a *pro se* litigant's failure to object to a magistrate's reports persuasive. Moreover, we are convinced that Supreme Court and Tenth Circuit case law support such a result. Indeed, the law of this circuit is that we will enforce a specific waiver of appellate rights contained in a knowing and voluntary plea agreement *unless* such enforcement constitutes a *miscarriage of justice*. *United*

*States v. Hahn*, 359 F.3d 1315, 1329 (10th Cir. 2004). In evaluating whether a miscarriage of justice has occurred, we apply the plain error test of *Olano*. *Id.* If enforcing a counseled defendant's knowing and voluntary waiver pursuant to a plea where that defendant can meet the plain error test constitutes a miscarriage of justice, it certainly must be true that enforcing the firm waiver rule where an uncounseled defendant's unobjected-to claim satisfies the plain error analysis would also constitute a miscarriage of justice. At a minimum, then, our "interest of justice" standard for determining whether we should excuse a defendant's failure to object to a magistrate judge's recommendation includes plain error. As such, and for the other reasons provided above, we review Mr. Morales-Fernandez's claim on the merits for plain error.

### III

"Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Gonzalez-Huerta*, 403 F.3d at 732 (quoting *United States v. Burbage*, 365 F.3d 1174, 1180 (10th Cir. 2004)). Thus, the first question we must answer is whether the district court committed error in dismissing Mr. Morales-Fernandez's § 2241 petition.

Ordinarily, when an alien is ordered removed from the United States, the

Attorney General is obliged to facilitate that individual's actual removal within 90 days, a period called the "removal period." 8 U.S.C. § 1231(a)(1). During the removal period, the Attorney General is required to detain an individual who has been ordered removed on certain specified grounds. *Id.* § 1231(a)(2). Congress recognized that securing actual removal within 90 days will not always be possible and authorized detention beyond the removal period in certain circumstances:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable [for violations of nonimmigrant status or entry conditions, violations of criminal laws, or threatening national security] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

*Id.* § 1231(a)(6). The question presented here is whether this statute permits the indefinite detention of an individual in the first enumerated category who, like Mr. Morales-Fernandez, has been deemed inadmissible to the United States.

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court interpreted § 1231(a)(6) and addressed the government's authority to detain two legal permanent residents beyond the 90-day removal period under § 1231(a)(6). In evaluating § 1231(a)(6), the Supreme Court considered whether indefinite detention of resident aliens beyond the 90-day removal period, as authorized by § 1231(a)(6), would present constitutional concerns. Ultimately, the Court

-14-

concluded that permitting the indefinite detention of resident aliens would present "serious" constitutional concerns, *id.* at 696, but that"[a]liens who have not yet gained initial admission to this country would present a very different question," *id*. at 682.

The Court then saved § 1231(a)(6) from unconstitutionality in the context of resident aliens by reading into the statute a limitation on the period of post-removal detention. *Id*. at 696-699. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized." *Id*. at 699. The presumptive period during which the detention of an alien is reasonably necessary to effectuate his removal is six months. *Id*. at 701.

While the present case was pending on appeal, the Supreme Court addressed whether the *Zadvydas'* ruling regarding resident aliens should be applied to inadmissible aliens like Mr. Morales-Fernandez. *Clark*, 125 S. Ct. at 722. The Court determined that: (1) having read § 1231(a)(6) one way in *Zadvydas*, it must read it the same way in subsequent cases, *id*. at 722-23; (2) its prior holding in *Zadvydas* interpreting § 1231(a)(6) thus applies to aliens deemed inadmissible to the United States, *id*.; (3) the reasonable period of post-removal detention is presumptively six months for both admitted and inadmissible aliens, *id*. at 727; (4) the petitioner's removal to Cuba was not reasonably foreseeable, *id*.; and (5) the petitioner's § 2241 petition therefore should be granted, *id*.

*Clark* decides Mr. Morales-Fernandez's appeal on the merits. There is no contention that conditions in Cuba have changed so that Mr. Morales-Fernandez's removal to Cuba is reasonably foreseeable. Until the United States' relationship with Cuba changes so that removal becomes feasible, or Congress amends 8 U.S.C. § 1231(a)(6) to distinguish between resident aliens and inadmissible aliens, *Clark* dictates that Mr. Morales-Fernandez be released and paroled into the United States. *See Clark*, 125 S. Ct. at 727 ("Both [petitioners] were detained well beyond six months after their removal orders became final. The Government having brought forward nothing to indicate that a substantial likelihood of removal subsists despite the passage of six months (indeed, it concedes that it is no longer even involved in repatriation negotiations with Cuba); and the District Court in each case having determined that removal to Cuba is not reasonably foreseeable; the petitions for habeas corpus should have been granted."); *id*. at 721 n.3 (noting that petitioner Benitez was subject to the conditions of release and 8 U.S.C. § 1253 authorized his detention if he violated the conditions of release); *see also id.* at 728 ("[A]ny alien released as a result of today's holding remains subject to the conditions of supervised release . . . And, if he fails to comply with the conditions of release, he will be subject to criminal penalties–including further detention." (citations omitted)) (O'Connor, J., concurring).

Because the instant case is factually indistinguishable and raises the same legal issues as those addressed by the Supreme Court in *Clark*, it is controlled by that decision, and the district court committed error by dismissing Mr. Morales-Fernandez's § 2241 petition. As to the second prong of the plain error test, an error is "plain" if it is clear or obvious at the time of the appeal, *Johnson v. United States*, 520 U.S. 461, 468 (1997), and *Clark* renders the error here both clear and obvious on appeal.

In order to satisfy the third prong of plain error review, that is, establish that the error affects his substantial rights, Mr. Morales-Fernandez bears the burden of showing "a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different." *United States v. Dominguez Benitez*, 124 S.Ct. 2333, 2339 (2004) (quotation omitted). There is no doubt, let alone a reasonable probability, that but for the district court's error in (unknowingly) misconstruing 8 U.S.C. § 1231(a)(6), the results of Mr. Morales-Fernandez's proceedings would have been different. As stated above, if the district court had not erred, Mr. Morales-Fernandez's petition would have been granted and he would have been released and paroled into the country. Therefore, Mr. Morales-Fernandez has met his burden of showing that the district court's error affected his substantial rights.

If a plain error affects the integrity, fairness, or public reputation of judicial

-17-

proceedings, it is in the discretion of the reviewing court to correct the error. *Johnson*, 520 U.S. at 467. Where a defendant suffers non-constitutional error, as here, the standard for satisfying the fourth prong of the plain error test is demanding. *Dominguez Benitez*, 124 S. Ct. at 2340. Mr. Morales-Fernandez must show that allowing his non-constitutional error to stand would be "particularly egregious" and would constitute a "miscarriage of justice." *United States v. Gilkey*, 118 F.3d 702, 704 (10th Cir. 1997). We easily conclude that permitting a defendant, such Mr. Morales-Fernandez, to remain indefinitely detained in a federal prison in the face of Supreme Court precedent clearly requiring otherwise most certainly would affect the integrity, fairness, or public reputation of judicial proceedings. We therefore exercise our discretion and correct this error.

For the reasons stated above, we **REVERSE** the district court's dismissal of Mr. Morales-Fernandez's § 2241 petition and **REMAND** this case for further proceedings consistent with this opinion. Mr. Morales-Fernandez's motion to proceed *in forma pauperis* on appeal is **GRANTED**.