BEAM, Circuit Judge,
dissenting.
A federal trial court may not order the “do over” of a substantially error-free criminal trial simply because the court wants to try to do a slightly better job the next time around or because the court believes the jury may produce a more acceptable result. As I explain in more detail below, a minor ambiguity in one sentence of one jury instruction does not support a new trial that will unreasonably waste tax dollars, unnecessarily exhaust prosecutorial resources of the Northern District of Iowa and thoughtlessly burden under-compensated members of the District’s jury pool. This particular jury, being a typically perceptive, intellectually astute and self-reliant American federal court deliberative body, faultlessly worked its way through a marginal instructional imperfection to reach a well-reasoned and evidentiarily supported verdict. Thus, the district court’s faulty discernment and errant application of plain trial error, coupled with its capricious overturning of the jury’s work product, constituted a fundamental abuse of judicial discretion. From this untoward result, I dissent.
Notwithstanding the district court’s seventy-two page explication on multiple aspects of the Amaya brothers post-trial motions, the factual and legal issues in this appeal are relatively simple. The dispute bottoms on whether Javier Amaya was guilty of being part of an 18 U.S.C. § 1956 money laundering conspiracy as affirmatively and unanimously determined by a jury of his peers. And, there can be no doubt that Javier was indeed guilty as charged.
To begin, I adopt the court majority’s factual recitation as set forth in the first three paragraphs of Section I. For purposes of this dissent, I further emphasize the following facts.
At the beginning of the trial, the district court orally instructed the jury on juror responsibilities, trial procedure, the substantive law applicable to the criminal charges against each defendant and the requirements for formalizing and returning a verdict. Each juror was also provided a written copy of these oral instructions for use during the trial. Both the written and oral instructions contained verdict formulation language which included words and marks to be used by the jury in returning a verdict specific to each defendant. The district court read from the written instructions pertaining to the mon *768 ey laundering conspiracy charges against the Amayas as follows:
Then Count 2, money laundering, step 1 is the verdict. On the money laundering conspiracy offense in Count 2 of the indictment and explained in instructions numbers 5 and 8, please mark your verdict. If you find the defendant [Angel Amaya] not guilty of this offense, do not answer the question in step 2. Instead go on to consider your verdict on the charge against Defendant Javier Amaya. There’s a place for not guilty and guilty. And then step 2, objectives of the money laundering conspiracy, if you found the defendant [Angel Amaya] guilty of the money laundering conspiracy offense in Count 2 of the indictment, please indicate which one or more money laundering offenses the conspirators agreed to commit as objectives of the money laundering conspiracy. Objectives of the money laundering conspiracy were explained in instruction number 8. To promote the carrying on of the drug conspiracy, to conceal proceeds of drug conspiracy, or to avoid transaction reporting requirements under federal law.
[T]hen Roman numeral two on page four of the verdict form involves Javier Ama-ya. As to Defendant Javier Amaya, we, the jury, unanimously find as follows. Notice it’s only Count 2 because Javier Amaya’s only charged in the money laundering count. Step 1, verdict, and then I’m not going to repeat it because it’s the identical money laundering with regard to the other — the first defendant.
Following is a copy of the verdict reached for each defendant as completed by the jury.
*769 [[Image here]]
*770 [[Image here]]
Federal Rule of Criminal Procedure 33(a) provides that, upon defendant’s motion, a district court “may vacate any judgment and grant a new trial if the interest of justice so requires.” “The Rule does not define ‘interests of justice’ and the *771 courts have had little success in trying to generalize its meaning.” United States v. Kuzniar, 881 F.2d 466, 470 (7th Cir.1989); see also Morales-Fernandez v. I.N.S., 418 F.3d 1116, 1119-20 (10th Cir.2005) (‘“interests of justice’ is a rather elusive concept”); United States v. Roberts, 978 F.2d 17, 21 (1st Cir.1992) (“Justice is an ideal that defies precise definition.”). For this reason, in order to understand what “interest of justice” means, the phrase must be placed in specific context. Rule 33 allows a defendant to file a motion for a new trial “based on newly discovered evidence” (Rule 33(b)(1)) or “grounded on any reason other than newly discovered evidence” (Rule 33(b)(2)). This latter basis is referred to as “other grounds'.”
One of the most common “other grounds” basis for a new trial motion is that the verdict is against the weight of the evidence. 3 Charles Alan Wright, et al., Federal Practice & Procedure Criminal § 582 (4th ed.). When this is the basis for the motion, “[a] district court may grant a new trial under Rule 33 only if the evidence weighs so heavily against the verdict that a miscarriage of justice may have occurred.” United States v. McClellon, 578 F.3d 846, 857 (8th Cir.2009) (quotation omitted). Here, however, the district court did not grant the Rule 33 motion for evidentiary reasons but rather grounded the ruling in a perception that legal error had occurred. Indeed, and even though the court majority fails to mention this important point, the district court correctly and specifically determined in its new trial analysis that Javier Amaya is “not entitled to ... [a] new trial[ ] on the money laundering conspiracy on the basis of insufficiency of the evidence.”
Rather, proceeding under the “other grounds” rubric of Rule 33(b)(2), the district court employed a plain error test as formulated in Federal Rule of Criminal Procedure 52(b). This Rule 52(b) analysis involved, of course, the adequacy of the jury instructions, more specifically the instructions dealing with the return of a verdict against Javier.
Although many trial judges find it good practice to provide juries with written copies of instructions on the law applicable in a particular case, including verdict formulation instructions, others do not follow that practice, relying upon the official record of the trial to provide a description of such information when needed. Both approaches are acceptable because written instructions including verdict-related instructions are not required in federal trial courts. United States v. Eberhardt, 657 F.2d 221, 222 (8th Cir.1981); United States v. Johnson, 466 F.2d 537, 538 (8th Cir.1972) (per curiam).
In any event, district courts have wide latitude in constructing either written or oral jury instructions, including written or oral verdict information. See United States v. White Calf, 634 F.3d 453, 456 (8th Cir.2011) (reviewing formulation of jury instructions for an abuse of discretion); United States v. Martinson, 419 F.3d 749, 753 (8th Cir.2005) (reviewing verdict form for an abuse of discretion). Jury instructions of either kind are sufficient “if they fairly and adequately submitted the issues to the jury.” United States v. Espinoza, 684 F.3d 766, 783 (8th Cir.) (quotations omitted), cert. denied, — U.S. -, 133 S.Ct. 589, 184 L.Ed.2d 386 (2012). And, we have never required jury instructions, including verdict forms contained therein, to be faultless or to fit the individualized or idiosyncratic preferences of a particular judge.
In both civil and criminal cases, this court has recognized that any alleged error in a verdict instruction must be viewed within the broader context of the jury instructions as a whole. United States v. *772 Brown, 330 F.3d 1073, 1077-78 (8th Cir.2003) (“the jury instructions and verdict form viewed as a whole did not allow the jury to convict [the defendant] of a different offense than ... charged”); Gander v. FMC Corp., 892 F.2d 1373, 1378 (8th Cir.1990) (“We must ... consider whether the form, taken together with the instructions to the jury, is so misleading or. confusing that the jury verdict cannot stand. In determining whether the verdict form is confusing, we must consider it in light of the instructions given.”) And, within this expansive context, where the jury instructions as a whole properly charge the jury, use of an instruction that is marginally imperfect or lacks some clarity does not render the instruction illusory, coercive or constitute reversible error. United States v. Hall, 325 F.3d 980, 982 (8th Cir.2003) (citing Crimm v. Mo. Pac. R.R., 750 F.2d 703, 711 (8th Cir.1984)). This is especially true, where, as here, the most that can be said in support of the trial judge’s Rule 33 new trial order is that there might conceivably have been a small measure of ambiguity in one phrase pertaining to one instruction, and even more, as here, when the purported ambiguity presents no hint whatever of having confused the jury.
As earlier noted, the district court informed the jury that the money laundering verdict instructions initially given for Angel Amaya and those given immediately thereafter for Javier Amaya were identical. And this was true, except that the words “not guilty” and “guilty” with a line behind each word or words, although included in Angel’s instruction, were omitted from Step 1 of Javier’s instruction. There can be little doubt, however, that the jury fully understood it could and should find Javier either “not guilty” or “guilty.” First, the jury instructions as a whole informed the jury of the charge and explained that each charge against each defendant needed to be considered separately, that each charge required a unanimous verdict, and that the jury had the option to find Javier either “not guilt/’ or “guilty.” Second, on Javier’s verdict form, like that of Angel, the jury was instructed that it should only move to “Step 2” if it found that Javier was guilty under “Step 1.” The jury moved to “Step 2,” in both instances, specifically finding, as relevant here, that Javier committed an objective in the money laundering conspiracy, namely concealing proceeds of the drug conspiracy. Finally, after the district court mentioned the verdict form issue it perceived to the jury, it then conducted a poll in which each individual juror in open court confirmed the earlier announced unanimous guilty verdict. Thus, there is no indication whatever in the trial record, that the slight imperfection in the verdict form imagined by the trial court — arising from the words in Step 1 saying “please mark your verdict” when there was no specific place to make such a mark except in the “Objectives” findings portion — constituted error of any hue let alone plain error. Indeed, since the record (including evidence of yet a second poll of the jurors) provides ample assurance that the jury intended to find Javier guilty, the verdict instruction had no adverse affect upon his substantial rights. And, with these assurances of a proper guilty verdict, nothing suggests that the verdict form’s alleged minor imperfection could have affected the fairness, integrity, or public reputation of Javier’s trial. Accordingly, these assurances viewed in the alternative context of a trial court’s supervisory discretion, clearly establish wholly abusive conduct on the part of the trial judge in its overturning of the jury’s fully supportable guilty verdict.
In Cundiff v. United States, this court determined that no error occurred in a substantially similar context. 501 F.2d 188 (8th Cir.1974) (per curiam). Cundiff high *773 lighted that the district court verbally explained the verdict instructions, as was done in this case, and also conducted a jury poll where “each juror agreed that the verdict was his separate and individual verdict,” id. at 190, as was also done in this case.
Further, and perhaps more importantly, the trial court’s supposed concern about the instructional ambiguity is much adieu about nothing. Every required facet of the return of a verdict in a federal criminal trial was fully complied with in this case. Federal Rule of Criminal Procedure 31 states, in relevant part, as follows:
(a) Return. The jury must return its verdict to a judge in open court. The verdict must be unanimous.
(d) Jury Poll. After a verdict is returned but before the jury is discharged, the court must on a party’s request, or may on its own, poll the jurors individually. If the poll reveals a lack of unanimity, the court may direct the jury to deliberate further or may declare a mistrial and discharge the jury.
So, without regard to the so-called instructional omission and resulting ambiguity, Rule 31’s requirements were followed to the letter in this case. The trial record reports that the following occurred in open court:
(The jury entered the courtroom.)
THE COURT: Thank you. Please be seated.
And who is the foreperson? Okay. Mr. Knaack, did I pronounce that correctly? Has the jury reached a unanimous verdict?
JUROR KNAACK: Yes, sir.
THE COURT: Okay. Would you hand the verdict form to Melissa, and then she’ll hand it to me, and I’ll review it. And then once I’ve reviewed it, I’ll announce the verdict.
She never peeks. I just can’t believe that.
Well, I’ve noticed a problem with the verdict form that wasn’t — it’s our fault. Well, let’s go through — okay.
With regard to Defendant Angel Amaya, you found the defendant guilty of the drug conspiracy, checked methamphetamine, cocaine, and marijuana, found on the methamphetamine 500 grams or more, found on the cocaine 500 grams or more, and on the money laundering count found the defendant guilty and then checked all three objectives.
So, with regard to Defendant Angel Amaya, is that your true and correct verdict? And we’ll just start in the back row, and we’ll go down the row.
JUROR SCHROEDER: Yes.
JUROR LIEN: Yes.
JUROR KNAACK: Yes, sir.
JUROR TONNER-COLVERT: Yes.
JUROR MULDER: Yes, sir.
JUROR BARGE: Yes.
JUROR MILLER: Yes, sir.
JUROR PLATHE: Yes, sir.
JUROR HOEKSTRA: Yes, sir.
JUROR SUHR: Yes, sir.
JUROR MOLGAARD: Yes, sir.
JUROR GAGNON: Yes, sir.
THE COURT: Now, with regard to Javier Amaya, the verdict form is inaccurate because it doesn’t have a place for you to check guilty or not guilty in step 1. But you’ve checked objectives— you checked the second objective, to conceal proceeds of the drug conspiracy. But what I want to know is with regard to Javier Amaya, do you find him guilty in step 1 of the money laundering conspiracy?
*774 JUROR KNAACK: Yes, sir.
THE COURT: And we’ll just start in the back row again.
JUROR SCHROEDER: Yes, sir.
JUROR LIEN: Yes, Your Honor.
JUROR KNAACK: Yes.
JUROR TONNER-COLVERT: Yes.
JUROR MULDER: Yes, sir.
JUROR BARGE: Yes, sir.
JUROR MILLER: Yes, sir.
THE COURT: Front row?
JUROR HOEKSTRA: Yes, sir.
JUROR SUHR: Yes, sir.
JUROR MOLGAARD: Yes, sir.
JUROR GAGNON: Yes, sir.
JUROR PLATHE: Yes, sir.
THE COURT: And then with regard to step 2, the objectives, you have crossed out the third objective which I had asked you to do before closing arguments. Aid then there’s an X next to the second objective which is to conceal the proceeds of the drug conspiracy. There’s a checkmark next to X.
So I just want to make sure that everybody’s unanimous intent was to find Javier Amaya guilty of money laundering because that’s the only charge he’s charged with and to find that it was to conceal the proceeds of the drug conspiracy. And just to be sure, because it’s our screw-up on the verdict form, we’ll start in the back row again. Is that your intent?
JUROR SCHROEDER: Yes.
JUROR LIEN: Yes.
JUROR KNAACK: Yes, sir.
JUROR TONNER-COLVERT: Yes.
JUROR MULDER: Yes, sir.
JUROR BARGE: Yes, sir.
JUROR MILLER: Yes.
THE COURT: Front row?
JUROR HOEKSTRA: Yes, sir.
JUROR SUHR: Yes, sir.
JUROR MOLGAARD: Yes, sir.
JUROR GAGNON: Yes.
JUROR PLATHE: Yes, sir.
(The jury exited the courtroom.)
Thus, it is abundantly clear that notwithstanding the minor ambiguity in the jury instruction arising from the words “please mark your verdict” with no obvious place to make a mark — but telling the jury to next move on to the “objectives” inquiry unless it found Javier not guilty — all requirements of Rule 31 were more than adequately met.
Accordingly, even if one could give any measure of credence to the district court’s purported concerns about polling the jurors in open court instead of returning them for more deliberation, such concerns were more than belied by the jury polling that occurred not just once, but twice. Indeed, impugning the credibility of the juror’s polling responses on this record constitutes unsupportable diminution of the jury room independence, intellectual acuity and ethical integrity of this jury. Under the circumstances presented in this case, United States v. Howard, establishes the absolute propriety of polling the jury as a proper mechanism to clear up any ambiguity in the finality of a jury verdict. 507 F.2d 559, 561 (8th Cir.1974); accord United States v. Poole, 545 F.3d 916, 918 (10th Cir.2008). And, Howard does not even remotely support the idea that polling a unanimous jury in open court may be a coercive action.[5]
*775 As a final act of inconsistency, the district court found sufficient evidence to convict Javier of the conspiracy but seems to, in part, base its new trial ruling on a latent observation that the evidence against Javier was “underwhelming.” Of course, even a cursory review of the trial record refutes this idea.
The de minimis nature of any substantive issue of lack of clarity in the jury instructions as a whole, the strength of the evidence of Javier Amaya’s guilt, the total lack of any indication of the trial judge’s ability to sway the jury’s decision-making capabilities by polling a wholly unanimous jury in open court, and the obvious strength of the twice repeated jury polls makes judicial abuse of discretion a palpable reality in this case. I dissent.

. The court majority finds that the district court did not abuse “its discretion when it determined that the errors affected Javier's substantial rights.” Relying on Brasfield v. United States, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926), and Amos v. United States, *775 496 F.2d 1269 (8th Cir.1974), the court majority seems to indicate that the district court's polling procedure may have coerced the jury. Brasfield is, of course, inapposite as it involved a situation where the trial judge polled a deadlocked jury, a practice that “is never useful and is generally harmful, [and] not to be sanctioned.” 272 U.S. at 449, 47 S.Ct. 135. Here, however, we are not dealing with a deadlocked jury as the jury foreperson announced to the district court that the jury had reached a unanimous verdict, the verdict form showed that the jurors had unanimously found Javier committed an objective of the money laundering conspiracy, and subsequent polling revealed unanimity. And, far from coercive conduct, in Amos, we actually sanctioned the trial court's conduct of polling and engaging a single juror "to dispel any confusion” in the verdict. 496 F.2d at 1273. In sum, Brasfield and Amos do not establish coercion in this case and certainly do not establish that the procedure utilized affected Javier’s substantial rights.