FILED
United States Court of Appeals
Tenth Circuit

October 26, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

NONA CORLEY, on behalf of C.M.C., a
minor,

     Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

     Defendant - Appellee.

No. 17-5112
(D.C. No. 4:16-CV-00337-JED-FHM)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **HARTZ**, and **MORITZ**, Circuit Judges.
_____

Nona Corley, on behalf of her minor daughter CMC, appeals the district

court's judgment affirming the denial of supplemental security income benefits to

CMC. Exercising jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, we

reverse and remand for further consideration by the agency.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment isn't binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

## BACKGROUND

Corley filed an application on CMC's behalf for supplemental security income, alleging CMC was disabled beginning November 19, 2012. Corley contends CMC, who was born in 2002, is disabled as a result of a learning disability that limits her ability to function at school and in her day-to-day activities.

After the agency denied the application initially and on reconsideration, Corley requested and testified at a hearing before an administrative law judge (ALJ). The ALJ found that while CMC's learning disability was a severe impairment under the agency's regulations, she wasn't disabled because her impairment didn't meet or medically equal the severity of any impairment listed in Appendix 1, Subpart P of 20 C.F.R. Part 404 (the "listings") or functionally equal the listings. The Appeals Council denied Corley's request for review, making the ALJ's decision the Commissioner's final decision. *See* 20 C.F.R. § 416.1481.

On CMC's behalf, Corley appealed the Commissioner's decision in federal district court. The magistrate judge issued a report recommending that the district court affirm the Commissioner's decision, and Corley filed objections to that recommendation. After a de novo review of Corley's objections, the district court accepted the magistrate judge's recommendation and affirmed the Commissioner's decision. This appeal followed.

## DISCUSSION

"We review the district court's decision de novo and independently determine whether the ALJ's decision is free from legal error and supported by substantial evidence." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). "Substantial

evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Frantz v. Astrue*, 509 F.3d 1299, 1300 (10th Cir. 2007) (internal quotation marks omitted). "In the course of our review, we may neither reweigh the evidence nor substitute our judgment for that of the agency." *Id.* (internal quotation marks omitted). But the agency's "failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (brackets and internal quotation marks omitted).

A child under the age of eighteen is "disabled" if she "'has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001) (quoting 42 U.S.C. § 1382c(a)(3)(C)(i)). To meet this test, the child's impairment must meet or functionally equal an impairment included in the listings. *See id.* The ALJ found that CMC wasn't disabled because her learning disability neither met nor functionally equaled the listings. Corley challenges both of these determinations, as well as the ALJ's determination that statements in the record concerning the intensity, persistence and limiting effects of CMC's impairment weren't credible.

**A. Functional Equivalence**

Corley's primary argument on appeal is that the ALJ erred in deciding that CMC's learning disability doesn't functionally equal the listings. As relevant here,

3

the Social Security Administration's regulations provide that a child's impairment functionally equals the listings when it results in an "extreme" limitation in at least one of six specified domains of functioning. 20 C.F.R. § 416.926a(a), (d). A limitation is extreme if it "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities," and may be found when one or more of the child's activities is limited to this degree. *Id.* § 416.926a(e)(3)(i). An extreme limitation is more than a "marked" limitation (which interferes "seriously" with the child's activities, *id.* § 416.926a(e)(2)(i)), but "does not necessarily mean a total lack or loss of ability to function." *Id.* § 416.926a(e)(3)(i). Of particular importance here, the regulations provide that the agency "*will* find that [the child has] an 'extreme' limitation when [the child has] a valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain, *and* [the child's] day-to-day functioning in domain-related activities is consistent with that score." *Id.* § 416.926a(e)(3)(iii) (emphasis added).

Corley argues that as a result of her learning disability CMC has an extreme limitation in the domain of Acquiring and Using Information and hence has an impairment that functionally equals the listings. As the name suggests, this domain focuses on how well a child learns information and is able to use the information she learns. *Id.* § 416.926a(g). The degree of any limitation is determined by comparing the child's functioning in this domain to the typical functioning of children of the same age who do not have impairments. *Id.* § 416.926a(f)(1). For a school-aged

4

child like CMC (age 6 to 11), the regulations state that a typical child is "able to learn to read, write, and do math, and discuss history and science," and to use these skills in academic and daily living situations by, among other things, "reading about various subjects." *Id.* § 416.926a(g)(2)(iv).

The ALJ found that CMC was limited in the Acquiring and Using Information domain, but only to a marked degree. In making this determination, the ALJ was required to consider all evidence in the case record. *Id.* § 416.926a(f)(1). And while the ALJ was not required to discuss all such evidence, "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Thus, an ALJ "may not ignore evidence that does not support his decision, especially when that evidence is significantly probative." *Briggs*, 248 F.3d at 1239 (internal quotation marks omitted).

Corley argues the ALJ failed to comply with these requirements, pointing to both the uncontested record regarding CMC's limitations in this domain, as well as her scores on the Woodcock Johnson III standardized test. We agree.

CMC's scores on the Woodcock Johnson III test show that she is more than three standard deviations below the mean for her age group in broad reading and basic reading skills, and almost as limited in reading comprehension and basic

writing skills.[1]  In fact, these scores indicate that CMC is in the 0.4% to less than

0.1% rank in reading in her age group.  But rather than discussing this highly

probative evidence and explaining why he chose not to rely on it, the ALJ effectively

ignored it by reporting only that CMC's Woodcock Johnson III test scores for

reading and writing were "low."  Aplt. App. Vol. II at 24.  Nor did the ALJ discuss

whether CMC's "day-to-day functioning in domain-related activities is consistent

with" the Woodcock Johnson III scores indicating that she was extremely limited in

the domain of Acquiring and Using Information, as relevant to determining whether

she has an extreme limitation under § 416.926a(e)(3)(iii).

The ALJ further ignored or minimized evidence in the record that supported a

finding that CMC's functioning in this domain was consistent with her Woodcock

Johnson III reading and writing scores.[2]  For example, in addition to failing to

acknowledge CMC's extremely low scores in these activities, the ALJ doesn't

mention that the psychometrist who evaluated these scores concluded that CMC's

basic reading skills and comprehension were "negligible" and her basic writing skills

"very limited."  Aplt. App. Vol. II at 244.  And while the ALJ notes that CMC's

---

[1]  The Commissioner doesn't dispute that the Woodcock Johnson III test is a "comprehensive standardized test" for purposes of measuring CMC's function in the Acquiring and Using Information domain, that her reading-related scores on this test are valid, or that at least two of these scores are three standard deviations or more below the mean as relevant to determining whether she has an extreme limitation under § 416.926a(e)(3)(iii).

[2]  We also note that the ALJ doesn't explain the basis for his "marked" determination, and instead just recounts the record without analysis.

4th grade special education teacher reported that her "reading and math skills were below grade level," *id.* at 25, this account was incomplete at minimum because the record in fact consistently shows that CMC's reading-related functions are more than two grade levels below her peers, *see, e.g., id.* at 225.[3]

The ALJ also reported several times that testing indicates that CMC's intellectual ability and intelligence are average to low average, thereby suggesting that she isn't greatly limited in learning and using information. But in doing so, he failed to mention that the record also consistently reports that as a result of her learning disability CMC has "significant aptitude/achievement discrepancies in the areas of reading and writing skills." *Id.* at 225; *see id.* at 196 (same), 213 (same). In other words, "[w]hen compared to her overall intellectual ability, [CMC's] achievement is significantly lower than predicted in the areas of broad reading, basic reading skills, reading comprehension, and basic writing skills." *Id.* at 245 (psychometrist evaluating CMC's Woodcock Johnson III test scores). This is significant probative information that undercuts the ALJ's reliance on CMC's aptitude scores and thus warranted discussion. *Cf.* 20 C.F.R. § 416.926a(e)(4)(ii)(A) (recognizing that the agency shouldn't rely on an IQ score to determine a child's degree of limitation when "other evidence shows that [the child's] impairment(s) causes

---

[3] The record also shows that CMC's teachers and other school officials consistently reported that CMC is a hard worker who tries to keep up with her peers but just can't do so.

7

[her] to function in school, home, and the community far below [her] expected level of functioning based on this score").

The ALJ further recites the good grades CMC received in one year, including a 97% in reading, to suggest that she was not extremely limited in the domain of Acquiring and Using Information. But he fails to include important context regarding these grades, which is that CMC was in special education classes for reading and language arts at this time and received "modified assignments, tests and *grading*," reading assistance, and other program modifications as a result of her learning disability. Aplt. App. Vol. II at 217 (emphasis added); *id.* at 229 (same); *see also* SSR 09-3p, 2009 WL 396025, at \*3 (Feb. 17, 2009) (identifying such accommodations as "helpful information" in determining the severity of a limitation in learning and using information); *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 700 (7th Cir. 2009) (concluding ALJ's reliance on child's grades was deficient when he failed to take into account modifications teachers made to the child's school assignments in response to his limitations). In addition, the ALJ didn't mention that the same Individual Education Plan (IEP) reporting these grades again concluded that CMC was "severely impair[ed]" in progressing in the general education curriculum as a result of "significant discrepancies in the areas of reading and writing skills." Aplt. App. Vol. II at 213; *id.* at 225 (same). The ALJ also minimized the significance of CMC's later grades, stating only that they showed CMC was "below average" in reading, language arts, and social studies. *Id.* at 23. In fact, CMC received Ds and Fs in these subjects, despite receiving modified assignments, reading

assistance, and other program modifications, *see id.* at 223 (2013-2014 report card), 200 (supplementary assistance and program modifications for this school year). Nor does the ALJ mention that school officials deemed CMC's reading skills so limited that they directed that state and district assessment tests (except for the reading test) be read to her. *See id.* at 218, 230; *see also id.* at 201. This is all significantly probative evidence the ALJ apparently rejected but without discussion, contrary to the legal standards stated above.

It also appears the ALJ failed to carefully consider other evidence he cited in support of his finding that CMC didn't have an extreme limitation in the domain of Acquiring and Using Information. In particular, the ALJ reported that he afforded "significant weight" to the State Agency medical opinions, *id.* at 23, both of which found CMC had only "marked" limitations in this domain, *id.* at 56, 63. But the agency's psychologists failed to consider one of the two teacher questionnaires that was available to them in reaching this conclusion. *Compare id.* at 54-55, 62 (reporting Feb. 15, 2013 and Nov. 18, 2013 teacher questionnaires in the "evidence of record"), *with id.* at 56, 63 (discussing only Nov. 18, 2013 questionnaire in evaluating CMC's limitations in Acquiring and Using Information domain). This omission was significant because CMC's third grade regular and special education teachers reported in their February 2013 questionnaire that CMC had "a very serious problem" (which corresponds to an "extreme" limitation under the regulations) in six of the ten activities in this domain, including all of those relating to reading and

9

writing.[4]  *Id.* at 136.  The state psychologists also failed to consider whether CMC

qualified as having an extreme limitation as a result of her Woodcock Johnson III

reading and writing scores and evidence of record consistent with them.  There is no

indication in his decision that the ALJ recognized these omissions or took them into

account in determining the weight to be accorded to these opinions.[5]

The ALJ also doesn't discuss Corley's statements in her 2013 function report

regarding CMC's limitations or her 2014 hearing testimony in concluding that CMC

had only marked limitations in the Acquiring and Using Information domain.  *See id.*

at 24-25.  Presumably, the ALJ did so based on his adverse credibility determination,

but this determination was also legally flawed for the reasons we discuss below.

But even without considering Corley's statements, we conclude the ALJ

ignored or failed to accurately report and discuss significant uncontroverted,

---

[4]  The Commissioner speculates that the ALJ may have seen improvement in CMC's learning limitations because CMC's fourth grade special education teacher didn't also rate CMC as having a "very serious" problem in these areas, rating them as "serious" or "obvious" problems instead.  Aplt. App. Vol. II at 185.  But the ALJ's decision doesn't include this reasoning, and "this court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself."  *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007).  Moreover, it's not clear that CMC's fourth grade teacher observed the improvement posited by the Commissioner, because this teacher also commented just below the cited ratings that CMC's "written expression skills are significantly below grade level" and that "[s]he requires much repetition in order to retain new material."  Aplt. App. Vol. II at 185.

[5]  And even without considering these omissions, it's unclear from the ALJ's decision why he thought these state psychologist opinions were so consistent with the objective medical evidence of record and the claimant's alleged activities of daily living that they should be afforded significant weight.  *See* Aplt. App. Vol. II at 23 (stating opinions deserved significant weight for these reasons).

probative evidence in the record that didn't support his decision that CMC's limitations in the domain of Acquiring and Learning Information were less than extreme. This was legal error and requires that we reverse and remand this case for the ALJ to assess and discuss whether CMC is disabled under the proper standards based on all of the relevant evidence of record.[6]

## B. Credibility Determination

Corley also argues the ALJ's credibility determination is legally flawed and requires remand. We agree.

"In determining whether a child is disabled, the agency will accept a parent's statement of a child's symptoms if the child is unable to adequately describe them." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1176 (10th Cir. 2014). "In such a case, the ALJ must make specific findings concerning the credibility of the parent's testimony, just as he would if the child were testifying," *Briggs*, 248 F.3d at 1239, and "must consider the entire case record and give specific reasons for the weight given to the individual's statements," SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996).[7] Based

---

[6] This error was not harmless because reasonable factfinders, considering the evidence discussed above, could find that CMC has an extreme limitation in the Acquiring and Using Information domain and hence has an impairment that functionally equals the listings. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (stating ALJ's error is harmless "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way").

[7] SSR 96-7p was in effect at the time of the ALJ's decision but has since been superseded by SSR 16-3p. *See* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016).

11

on this review "the ALJ may find all, only some, or none of an individual's allegations to be credible." *Briggs*, 248 F.3d at 1239 (internal quotation marks omitted). In addition, all credibility findings must be "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Knight*, 756 F.3d at 1176 (internal quotation marks omitted).

The ALJ's credibility determination in this case didn't comply with these legal standards. The determination in its entirety states only that "the statements concerning the intensity, persistence and limiting effects of [CMC's] symptoms are not entirely credible for the reasons explained below." Aplt. App. Vol. II at 23. At the outset, it is unclear from the determination which "statements" in the record the ALJ found "not entirely credible." *Id.* He could be referring to all or some of Corley's statements in her 2014 hearing testimony, those included in her 2013 written report regarding her daughter's functions,[8] or even all or some of the statements by CMC's teachers and school administrators in the two teacher questionnaires and three IEPs in the record.

Furthermore, there are no "reasons explained below" for the ALJ's credibility determination. All that follows this determination is the ALJ's report that he afforded significant weight to the State Agency medical opinions and his seven-page

---

[8] We note that the state psychologists considered Corley's 2013 function report in assessing CMC's functioning and apparently credited her statements there because they agreed that "the individual's statements about the intensity, persistence, and functionally limiting effects of the symptoms [are] substantiated by the objective medical evidence alone." Aplt. App. Vol. II at 57, 64.

assessment of CMC's limitations in each of the six domains followed by his conclusion that CMC isn't disabled. Thus, we are "left to guess what evidence, if any, belies" whatever statements the ALJ found weren't credible. *Knight*, 756 F.3d at 1176. To the extent the ALJ's adverse credibility determination encompassed Corley's 2013 and 2014 statements regarding CMC's limitations in the domain of Acquiring and Using Knowledge, we also note that a significant portion of the record evidence appears to support these statements, a circumstance that heightens the need for the ALJ to explain why he found these statements weren't credible.[9] *See Briggs*, 248 F.3d at 1239. The boilerplate, non-specific statement the ALJ provided doesn't suffice, as it doesn't allow us to determine if his credibility determination is supported by substantial evidence.[10] We therefore reverse and remand for a proper credibility determination as well.

---

[9] With respect to CMC's functioning in this domain, Corley stated in the 2013 function report that CMC could read simple words and print some letters and her name, but was unable to read capital letters of the alphabet, read capital and small letters, read and understand simple sentences, read and understand stories in books or magazines, write in longhand, spell most 3-4 letter words, or write a simple story with 6-7 sentences. Aplt. App. Vol. II at 156. She also reported that CMC cries when asked to read out loud because she doesn't know the words, *id.*, and that she can't tell time or make change and doesn't know the days of the week or months of the year, *id.*, which are among the bench marks the SSA has set for a school-age child in the Acquiring and Learning Information domain, *see* SSR 09-3p at *5. Corley's 2014 hearing testimony regarding CMC's limitations in this domain is generally consistent with her 2013 statements.

[10] The ALJ's error was not harmless because reasonable factfinders could find Corley's statements credible and that they support a finding of disability.

## C. Listing 112.02

Corley also argues that the ALJ committed legal error by failing to properly consider whether CMC's impairment met or equaled Listing 112.02 (Organic Mental Disorders).[11] All the ALJ said on this point is that he "carefully compared the claimant's signs, symptoms, and laboratory findings with the criteria specified in all of the Listings of Impairments . . . [with] specific emphasis upon 112.00 Mental Disorders. Based on this analysis, the undersigned finds the claimant's impairments do not meet or equal the criteria established" for any listing. Aplt. App. Vol. II at 20. This generalized, conclusory treatment is inadequate under our decision in *Clifton*, which required the ALJ "to discuss the evidence and explain why he found" CMC did not meet or equal Listing 112.02 and any other listings he considered, 79 F.3d at 1009.

The magistrate judge nonetheless recommended that the ALJ's decision on this issue be upheld, based on his analysis of Listing 112.02's requirements. Corley didn't address this recommendation in her objections to the magistrate judge's report and recommendation. "We have adopted a firm-waiver rule providing that the failure to make timely objections to a magistrate judge's recommendations waives appellate review of both factual and legal questions." *Allman v. Colvin*, 813 F.3d 1326, 1329 (10th Cir. 2016) (internal brackets and quotation marks omitted). This rule applies in Social Security appeals, *see, e.g., id.*; *Berna v. Chater*, 101 F.3d 631, 632-33

---

[11] The Social Security Administration revised this listing and renamed it "Neurocognitive Disorders" after the ALJ's decision.

(10th Cir. 1996), and precludes appellate review of this issue in a counseled case such as this unless "the interests of justice require review," *Allman*, 813 F.3d at 1329 (internal quotation marks omitted). This is a high standard, similar to plain error review. *See Morales-Fernandez v. INS*, 418 F.3d 1116, 1120, 1122 (10th Cir. 2005). Corley doesn't argue this standard is met here and thereby waived this argument for purposes of this appeal.[12] *See Allman*, 813 F.3d at 1330 (finding waiver where a counseled party failed to object to a magistrate judge's recommendation and didn't demonstrate that the interests of justice compelled appellate review).

## CONCLUSION

For these reasons, we conclude the ALJ failed to comply with the relevant legal standards in determining whether CMC had extreme limitations in the Acquiring and Using Information domain and in his credibility determination. Accordingly, we reverse the denial of benefits and remand this action to the district court with directions to remand it to the Commissioner for further proceedings consistent with this decision.

Entered for the Court

Nancy L. Moritz
Circuit Judge

---

[12] "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Morales-Fernandez*, 418 F.3d at 1122-23 (internal quotation marks omitted).